1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE A. DARLING,<br><br>                    Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN,[1] Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | Case No. EDCV 13-266 JC<br><br>MEMORANDUM OPINION AND<br>ORDER OF REMAND |

## I.    SUMMARY

On February 14, 2013, plaintiff Leslie A. Darling ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; February 19, 2013 Case Management Order ¶ 5.

---

[1]Carolyn W. Colvin is substituted as Acting Commissioner of Social Security pursuant to Fed. R. Civ. P. 25(d).

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is REVERSED AND REMANDED for further proceedings

3    consistent with this Memorandum Opinion and Order of Remand.

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5    **DECISION**

6         On October 12, 2007, plaintiff filed an application for Supplemental

7    Security Income.  (Administrative Record ("AR") 108).  Plaintiff asserted that he

8    became disabled on February 1, 2007, due to back, groin and leg pain.  (AR 138).

9    The Administrative Law Judge ("ALJ") examined the medical record and heard

10   testimony from plaintiff (who was represented by counsel) and a vocational expert

11   on February 24, 2010 ("Pre-Remand Hearing").  (AR 20-45).

12        On April 2, 2010, the ALJ determined that plaintiff was not disabled

13   through the date of the decision ("Pre-Remand Decision").  (AR 8-16).  The

14   Appeals Council denied plaintiff's application for review of the Pre-Remand

15   Decision.  (AR 1).

16        On July 19, 2011, this Court entered judgment remanding the case for

17   further proceedings based upon the parties' Stipulation to Voluntary Remand

18   Pursuant to Sentence Four of 42 U.S.C. § 405(g) and to Entry of Judgment.  (AR

19   414-15).  The Appeals Council in turn remanded the case for a new hearing.  (AR

20   418-19).  On remand the ALJ heard testimony from plaintiff (who again appeared

21   with counsel), and a vocational expert on August 14, 2012 ("Post-Remand

22   Hearing").  (AR 368-409).

23        On November 9, 2012, the ALJ determined that plaintiff was not disabled

24   for the period of October 12, 2007 (*i.e.*, when plaintiff filed the benefits

25   application at issue in this case) to February 3, 2011 (*i.e.*, until plaintiff was

26   granted benefits commencing on February 4, 2011 based on a subsequent

27   ///

28   ///

1  application for Supplemental Security Income) ("Post-Remand Decision").[2]  (AR

2  353-62).  Specifically, the ALJ found that from October 12, 2007 to February 3,

3  2011:  (1) plaintiff suffered from the severe impairments of obesity, low back pain,

4  degenerative disc disease of the cervical spine, and degenerative joint disease of

5  the right hip, and the non-severe impairments of hypertension and hyperlipidemia

6  (AR 355-56); (2) plaintiff's impairments, considered singly or in combination, did

7  not meet or medically equal a listed impairment (AR 356); (3) plaintiff retained

8  the residual functional capacity to perform a range of light work (20 C.F.R.

9  § 416.967(b) with additional exertional and nonexertional limitations[3] (AR 356-

10  57); (4) plaintiff had no past relevant work (AR 359); (5) there are jobs that exist

11  in significant numbers in the national economy that plaintiff could perform,

12  specifically packager, inspector and assembler (AR 360); and (6) plaintiff's

13  allegations regarding his limitations were not credible to the extent they were

14  inconsistent with the ALJ's residual functional capacity assessment (AR 357).

15  ///

16  ///

17  ///

18

19      [2]The ALJ stated that the ALJ's discussion regarding plaintiff's testimony about his

20  subjective complaints and alleged functional limitations and the relevant medical evidence of
    record from the Pre-Remand Decision (AR 12-13) had been incorporated by reference into the

21  Post-Remand Decision.  (AR 357-58).

22      [3]The ALJ determined that plaintiff:  (i) could lift and/or carry 20 pounds occasionally and

23  10 pounds frequently;  (ii) could stand and/or walk for four hours and sit for six hours out of an
    eight-hour workday with regular breaks; (iii) had no limitations with respect to pushing and/or

24  pulling other than as indicated for lifting and/or carrying; (iv) could rarely to never use foot
    controls with the right lower extremity; (v) was precluded from climbing ladders, ropes or

25  scaffolds; (vi) could occasionally balance, stoop, kneel, crouch, and climb ramps and stairs;

26  (vii) could occasionally reach overhead bilaterally; (viii) required a hand held assistive device for
    ambulation on uneven terrain and for prolonged ambulation; (ix) could occasionally use moving,

27  hazardous machinery; and (x) could occasionally be exposed to unprotected heights.  (AR 356-

28  57).

III.   **APPLICABLE LEGAL STANDARDS**

A.   **Sequential Evaluation Process**

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)   Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)   Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)   Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work

4

1    experience, allow the claimant to adjust to other work that
2    exists in significant numbers in the national economy?  If so,
3    the claimant is not disabled.  If not, the claimant is disabled.

4  Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th
5  Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at
6  1110 (same).

7    The claimant has the burden of proof at steps one through four, and the
8  Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262
9  F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch
10  v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of
11  proving disability).

12    **B.    Standard of Review**

13    Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of
14  benefits only if it is not supported by substantial evidence or if it is based on legal
15  error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.
16  2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457
17  (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable
18  mind might accept as adequate to support a conclusion."  Richardson v. Perales,
19  402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a
20  mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing
21  Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

22    To determine whether substantial evidence supports a finding, a court must
23  "'consider the record as a whole, weighing both evidence that supports and
24  evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.
25  Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d
26  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming
27  or reversing the ALJ's conclusion, a court may not substitute its judgment for that
28  of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

IV.   **DISCUSSION**

Plaintiff contends, in part, that a reversal or remand is warranted because the ALJ's determination at step five that there are jobs that exist in significant numbers in the national economy which plaintiff could perform is not supported by substantial evidence.  The Court agrees.  As the Court cannot find the ALJ's error harmless, a remand is warranted.

A.   **Pertinent Law**

At step five of the sequential evaluation process, the Commissioner has the burden to demonstrate that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity, age, education, and work experience.  Tackett, 180 F.3d at 1100 (citing 20 C.F.R. § 404.1560(b)(3)); 42 U.S.C. § 423(d)(2)(A).  The Commissioner may satisfy this burden, depending upon the circumstances, by obtaining testimony from an impartial vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  Tackett, 180 F.3d at 1100-01 (citations omitted).  Where, as here, a claimant suffers from both exertional and nonexertional limitations, the Grids do not mandate a finding of disability based solely on the claimant's exertional limitations, and the claimant's non-exertional limitations are at a sufficient level of severity such that the Grids are inapplicable to the particular case, the Commissioner must consult a vocational expert.[4] Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007); see Lounsbury v. Barnhart, 468 F.3d 1111, 1116 (9th Cir.), as amended (2006); Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989).

///

---

[4]The severity of limitations at step five that would require use of a vocational expert must be greater than the severity of impairments determined at step two.  Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

1    At an administrative hearing, an ALJ may seek testimony from a vocational
2    expert as to "(1) what jobs the claimant, given his or her residual functional
3    capacity, would be able to do; and (2) the availability of such jobs in the national
4    economy." Tackett, 180 F.3d at 1101.  The vocational expert's testimony may
5    constitute substantial evidence of a claimant's ability to perform work which
6    exists in significant numbers in the national economy when the ALJ poses a
7    hypothetical question that accurately describes all of the limitations and
8    restrictions of the claimant that are supported by the record.  See id.; see also
9    Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support
10   the assumptions in the hypothetical, the vocational expert's opinion has no
11   evidentiary value.").

12   ALJs routinely rely on the Dictionary of Occupational Titles ("DOT") "in
13   determining the skill level of a claimant's past work, and in evaluating whether the
14   claimant is able to perform other work in the national economy." Terry v.
15   Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); see also
16   20 C.F.R. § 416.966(d)(1) (DOT is source of reliable job information).  The DOT
17   is the presumptive authority on job classifications.  Johnson v. Shalala, 60 F.3d
18   1428, 1435 (9th Cir. 1995).  An ALJ may not rely on a vocational expert's
19   testimony regarding the requirements of a particular job without first inquiring
20   whether the testimony conflicts with the DOT, and if so, the reasons therefor.
21   Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social
22   Security Ruling 00-4p).

23   **B.    Pertinent Facts**
24   At the Post-Remand Hearing, the vocational expert testified that there were
25   only three jobs that plaintiff (or a hypothetical individual with plaintiff's
26   characteristics) could perform, specifically (1) packager (DOT § 559.687-074) –
27   total 40,000 positions in California, and 400,000 positions nationwide;
28   (2) inspector (DOT § 727.687-066) – total 47,000 positions in California, and

7

1 434,000 positions nationwide; and (3) assembler (DOT § 731.687-034) – total

2 20,000 positions in California, and 235,000 positions nationwide.  (AR 402-03).

3 The vocational expert opined that the total number of positions for each job would

4 be eroded by two thirds, however, essentially due to plaintiff's limited ability to

5 use foot controls.  (AR 400-03).

6      On cross-examination, the vocational expert testified that he used the "Job

7 Browser Pro" software program as "the basis of [his employment] numbers."  (AR

8 403-04).  When plaintiff's attorney asked the vocational expert whether, with

9 respect to the inspector position, his job estimates represented totals for the

10 particular "DOT number" as opposed to "the entire code," the ALJ interrupted and

11 suggested that the attorney submit briefing on a different issue (*i.e.*, the region(s)

12 from which the ALJ should consider employment numbers).  (AR 403-04).

13      On August 17, 2012 (*i.e.*, after the Post-Remand hearing), plaintiff's

14 attorney submitted a letter brief to the ALJ, together with documents plaintiff

15 represents were generated by the Job Browser Pro software program for each of

16 the representative jobs the vocational expert identified at the hearing ("Job

17 Browser Pro reports").  (Plaintiff's Motion at 9) (citing AR 552-577).

18     **C.**    **Analysis**

19      Plaintiff essentially contends that the vocational expert's testimony

20 regarding the number of positions available for the jobs of packager, inspector,

21 and assembler was not reliable, and therefore could not serve as substantial

22 evidence supporting the ALJ's determination at step five that the representative

23 jobs existed in "significant numbers" in the national economy.  (Plaintiff's Motion

24 at 8-14; Reply at 3-7).  The Court agrees that a remand is warranted to permit the

25 ALJ properly to consider the Job Browser Pro reports and to reevaluate whether

26 substantial evidence supports the non-disability determination at step five.

27      First, the ALJ said nothing in the decision about the Job Browser Pro

28 reports plaintiff provided after the Post-Remand Hearing.  For the reasons

discussed below, the Job Browser Pro reports were significant probative evidence that the ALJ should have considered at step five.  The ALJ's silent disregard of such evidence was legal error.  See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ must provide explanation when rejecting "significant probative evidence") (citation omitted).

Second, although a vocational expert's testimony may, without more, constitute substantial evidence of the number of jobs that exist in the national economy, see Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A [vocational expert's] recognized expertise provides the necessary foundation for his or her testimony. "), remand may be appropriate where the record reflects that the vocational expert's testimony was fundamentally flawed.  See, e.g., Farias v. Colvin, 2013 WL 2151422, *1-2 (9th Cir. May 20, 2013) (remand required where vocational expert testified that a person with plaintiff's characteristics and residual functional capacity could perform a particular occupation (i.e. "head dance hall hostess") but record suggested vocational expert provided employment data for a completely different occupation (i.e., "restaurant hostess")); Dorman v. Social Security Administration, 2013 WL 4238315, *10 (D. Mass. May 21, 2013) (remand required where vocational expert's opinion regarding availability of jobs in national and regional economies job was "fundamentally flawed"); cf. Brault v. Social Security Administration, Commissioner, 683 F.3d 443, 450 (2d Cir. 2012) (suggesting that ALJ may properly question reliability of vocational expert opinion where testimony appears to be "conjured out of whole cloth") (citation and internal quotation marks omitted).  Remand on such a basis is appropriate in plaintiff's case.

Here, as plaintiff correctly points out (Plaintiff's Motion at 10-13; Reply at 4-6), the Job Browser Pro reports suggest that the employment numbers the vocational expert provided at the hearing may have erroneously pertained to entire Occupational Employment Survey ("OES") statistical groups rather than the

1  individual representative occupations encompassed therein.  For example, the

2  vocational expert testified that there were 47,000 positions in California and

3  434,000 nationally for the individual occupation of inspector (DOT § 727.687-

4  066), and 40,000 positions in California and 400,000 nationally for packager

5  (DOT § 559.687-074).  (AR 402).  The Job Browser Pro reports, however, reflect

6  significantly fewer positions for all of OES group No. 51-9061 (*i.e.*, 47,720 for

7  California and 434,170 nationally) – the OES group that encompasses both the

8  inspector and packager occupations, and which contains a total of "782 specialty

9  occupations (unique DOT codes)."  (AR 554, 561, 563, 570).  Similarly, the

10 vocational expert testified that for the individual assembler occupation (DOT

11 § 731.687-034) there were 20,000 positions in California and 235,000 nationally –

12 virtually the same numbers as for all of OES group No. 51-9399 (*i.e.*, 20,190 in

13 California, 235,910 nationally) the OES group that encompasses the assembler

14 occupation and which contains a total of 1587 individual occupations.  (AR 572,

15 575).  Moreover, the hearing transcript suggests that the vocational expert based

16 his opinions solely on the raw data generated by the Job Browser Pro program

17 (*i.e.*, without any evaluation based on professional experience).[5]  (AR 403, 404).

18      Accordingly, the vocational expert's testimony regarding the availability of

19 the individual representative jobs, which the ALJ adopted, could not serve as

20 substantial evidence supporting the ALJ's determination at step five that plaintiff

21 could perform jobs that existed in "significant numbers" in the national economy.

22 See, e.g., Dorman, 2013 WL 4238315 at *10 (ALJ improperly relied on testimony

23 regarding number of jobs available in the national and regional economies where

24 vocational expert "specifically confirmed that he relied exclusively on [Job

25

26          [5]At the hearing the vocational expert acknowledged that the basis of his employment

27 numbers was the Job Browser Pro program.  (AR 403, 404).  When asked if "the Job Browser
   Pro program [was] a reliable estimate of the Department of Labor statistics," the vocational

28 expert simply responded, "[t]hat's what I use."  (AR 404).

Browser Pro] software, and not on any other experience, to provide the job numbers for [representative] occupations [and] rendered no opinion as to the accuracy of those numbers and did not otherwise endorse the information provided by SkillTran's Job Browser Pro software."); <u>Clark v. Astrue</u>, 2010 WL 2924237, *3 (D. Me. July 19, 2010) (remand warranted where ALJ "relied on the vocational expert's testimony as to the numbers of regional and national jobs available, but the vocational expert "essentially admitted that he . . . [relied] on published raw numbers, which pertained not to the specific DOT code-identified jobs at issue but rather to groups of jobs of differing skill and exertional levels that happened to contain the three specific jobs"); <u>compare</u> <u>Nichols v. Astrue</u>, 2012 WL 474145, *12-*13 (D. Mass. Feb. 13, 2012) (rejecting plaintiff's challenge to vocational expert's testimony as to numbers of jobs in the regional and national economies where vocational expert did not simply cite "the raw numbers with no further elucidation or statement of the accuracy of their estimates[,]" but, rather, testified "that the numbers she gave were the best information available"); <u>Poisson v. Astrue</u>, 2012 WL 1067661, *9 (D. Me. Mar. 28, 2012) (rejecting plaintiff's challenge to reliability of vocational expert's testimony where vocational expert "explained why she thought that the underlying data was reliable and endorsed the numbers derived therefrom as accurate"), <u>report and recommendation adopted</u>, 2012 WL 1416669 (D. Me. Apr. 24, 2012).

Finally, the Court cannot conclude that the ALJ's error was harmless since the vocational expert testified that the only jobs available at the light exertional level were the three representative jobs, and defendant points to no persuasive evidence in the record which could otherwise support the ALJ's determination at step five that plaintiff was not disabled.

///
///
///

**V.    CONCLUSION**[6]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[7]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  September 4, 2013

_____/s/_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[6]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.  On remand, however, the ALJ may also wish to reconsider whether the correct Grid rules were consulted in plaintiff's case.  As plaintiff noted, the ALJ used the Grid rules for the light vocational base as a framework at step five, rather than the rules for sedentary work (which, the ALJ acknowledged, would have directed a finding of "disabled"), even though the vocational expert essentially opined that the sedentary rules would be more applicable.  (AR 400, 405); see Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001) (error for ALJ to "selectively focus[] on . . . [evidence] which tend[s] to suggest non-disability").

[7]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted).  Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).